Todd M. Friedman (SBN 216752)
tfriedman@toddflaw.com
Adrian R. Bacon (SBN 280332)
abacon@toddflaw.com
**Law Offices of Todd M. Friedman, P.C.**
21550 Oxnard St., Suite 780
Woodland Hills, CA 91367
Tel: (323) 306-4234
Fax: (866) 633-0228

Attorneys for Plaintiff
ZOLTON NAGY

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZOLTON NAGY, on behalf of himself and all others similarly situated, | Case No.: |
| | **CLASS ACTION COMPLAINT** |
| Plaintiff, | |
| vs. | For Violations of: |
| FITNESS INTERNATIONAL, LLC dba L.A. FITNESS, a California corporation; and DOES 1-20, inclusive, | 1. Electronic Funds Transfer Act (15 U.S.C. § 1693 *et seq.*); 2. Consumer Legal Remedies Act (Cal Civ Code § 1750. *et seq.*); 3. Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*); and 4. Conversion. |
| Defendants. | **DEMAND FOR JURY TRIAL** |

Plaintiff, on behalf of himself and all others similarly situated, alleges as follows:

## JURISDICTION AND VENUE

1.     This Class Action Complaint is brought pursuant to Federal Rule of Civil Procedure 23 for, *inter alia*, alleged violations of the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. 1693, *et seq.*, California's Consumer Legal

Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq*., and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*.

2.     This Court has original jurisdiction over this matter pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. 109-2, 119 Stat. 4 (Feb. 18, 2005), which explicitly provides for the original jurisdiction of federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from the State of citizenship of any Defendants, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interests and costs. 28 U.S.C. §1332(d)(2).

3.     In the case at bar, there are at least 100 members in the proposed Class and Subclass, the total of putative Class Members' claims is in excess of $5,000,000.00 in the aggregate, exclusive of interests and costs, and Plaintiff seeks to represent a nationwide class of consumers, establishing minimum diversity.

4.     Venue is proper in the above-captioned court because a substantial portion of the events giving rise to Plaintiff's claims took place in this district.

## THE PARTIES

5.     Plaintiff ZOLTON NAGY ("Plaintiff") is, and at all relevant times was, a resident of Los Angeles County, California.

6.     On information and belief, Defendant FITNESS INTERNATIONAL, LLC dba L.A. FITNESS ("Defendant") is, and at all relevant times was, a California limited liability company with a principal place of business in Irvine, California.

7.     The identities of Defendants designated as DOES 1-20 are currently not known and may include natural persons and businesses entities including product manufacturers, medical providers, professionals, subsidiaries, divisions, professionals, contractors, estates, administrators of estates, and trusts.  Any conditions precedent to the filing of suit and/or the naming of a Defendant herein that may apply have been, or will be, complied with in full by Plaintiff, including

2

the filing of claims, notices, and/or such other action as maybe required by applicable law. Plaintiff will amend this complaint, according to all applicable laws, with the true names and capacities of any Doe defendant once ascertained.

8.      Plaintiff is informed and believes, and thereon alleges, that at all relevant times, Defendants, and each of them, were the agents, servants, employees, co-conspirators, and/or joint venturers of each other, acting within the scope and authority of said agency, employment and/or venture and with the permission and consent of their co-Defendant(s) and/or that all of said acts were subsequently performed with the knowledge, acquiescence, ratification and consent of the respective principals and that the benefits thereof were accepted by said principals.

9.      Plaintiff is informed and believes, and thereon alleges, that the acts and conduct herein alleged by Defendants, and each of them, was duly authorized, ordered and directed by the respective and collective Defendant corporate employers and its officers and management-level employees.  In addition, said corporate employers participated in the aforementioned acts and conduct of their employees, agents and representatives, and upon completion of the aforesaid acts and conduct of said corporate employees, agents and representatives, Defendants, and each of them, ratified, accepted the benefits of, condoned, lauded, acquiesced, approved and consented to all said acts and conduct.

10.      Plaintiff is informed and believes, and thereon alleges, that Defendants, and each of them, were and are the alter ego and/or successors in interest of every other Defendant.  At all times there existed such a unity of interest and ownership such that any separateness ceased to exist, and at all relevant times the one was a mere shell or instrumentality through which the other(s) carried out their business.  Each Defendant exercised such complete control over the other(s) and so dominated it to achieve individual goals. Defendant, and each of them, so ignored business formalities that any separateness was merely a fiction and did not

exist and should be deemed not to exist.  At all relevant times, it is alleged that that
Defendants, and each of them, acted for itself as well as on behalf of its alter
ego(s).

11.    At all times hereinafter mentioned, Plaintiff will show, according to
proof, that Defendants, and each of them, were and are the alter egos, successors,
and/or successors in interest, of the others.

**FACTUAL ALLEGATIONS**

12.    Plaintiff incorporates by reference all preceding paragraphs as though
set forth fully herein.

13.    Plaintiff paid for membership at Defendants' L.A. Fitness brand
health and exercise facilities located in Los Angeles County, California, from
approximately 2015 through June 2020.

14.    On information and belief, Defendants' standard practice is to
automatically withdraw monthly gym membership fees from its members' personal
bank accounts via electronic fund transfers ("EFTs").

15.    From approximately July 2018 through June 2020, Defendants made
recurring automatic EFTs from Plaintiff's bank account that Plaintiff had not
authorized.

16.    In or around June 2020, Plaintiff discovered the unauthorized EFTs.
Plaintiff informed Defendants and discovered that some of the charges were the
result of Defendants' linking the membership of another, unrelated L.A. Fitness
patron to Plaintiff's personal bank account, including after that membership had
been cancelled. Defendant had thus been withdrawing membership fees for both
gym memberships from Plaintiff's personal bank account without prior written
authorization.

17.    In or around August 2020, Defendant acknowledged the withdrawal
of funds and agreed to refund three (3) of the unauthorized payments. However,
Defendants refused to refund the balance of the remaining payments, which total

4

1  Plaintiff's estimates to be at least $600.

2      18.    Accordingly, Plaintiff requested that Defendants refund the additional

3  fund but has not received a response to date.

4      19.    When Defendants advertised the terms and conditions of membership

5  at its L.A. Fitness facilities, including regarding the authorization in writing of

6  recurring, automatic EFTs, Defendants misrepresented to Plaintiff the authority of

7  its employees to initiate such transactions.

8                        **<u>CLASS ALLEGATIONS</u>**

9      20.    Plaintiff incorporates by reference all preceding paragraphs as though

10  set forth fully herein.

11      21.    Plaintiff alleges, on information and belief, that Defendants'

12  marketing campaigns with respect to automatic or recurring EFTs were created by

13  Defendants in California and were disseminated nationwide from California.

14      22.    Plaintiff is informed and believes, and thereon alleges, that, at all

15  relevant times, Defendants' membership sales are governed by California law

16  because California is the state in which Defendants do business and from which the

17  sales and/or services, and the allegedly unlawful acts, originated.

18      23.    The material circumstances surrounding Plaintiff's experience were

19  the same as, or substantially similarly to, that of other putative Class Members, all

20  of whom were required to pay, and did pay, money for gym memberships

21  marketed and sold by Defendants.

22      24.    Plaintiff thus brings this action on behalf of himself and all others

23  similarly situated, as a member of the proposed class of consumers defined as

24  follows:

25      **Class:**

26      All persons in the United States from whose bank accounts Defendants initiated a recurring automatic electronic fund transfer not authorized in writing by the parties' original agreement, within the one year prior to the filing of this Complaint.

27

28

CLASS ACTION COMPLAINT; JURY DEMAND

**California Subclass:**

All Class Members who resided in California at the time they executed an original agreement authorizing recurring automatic electronic fund transfers by Defendants.

25.     Defendants, its affiliates, employees, agents, and attorneys and the Court are excluded from the Class.

26.     Plaintiff reserves the right to amend the Class and/or Subclass and to add additional subclasses, if discovery and further investigation reveals such action is warranted.

27.     While the exact number and identities of Class Members are unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff is informed and believes, and thereon alleges, that the Class includes hundreds, if not thousands, of members.  Plaintiff is informed and believes, and thereon alleges, that Class Members may be easily ascertained by the records maintained by Defendants.

28.     No violations alleged in this complaint are contingent on any individualized interaction of any kind between members of the Class and Defendants.

29.     This suit is thus properly maintainable as a class action pursuant to Fed. R. Civ. P. 23(a) because the Class is so numerous that joinder of the Class Members is impracticable and the disposition of all claims in one action will provide substantial benefits to the parties, to absent Class Members, and to the Court.

30.     There are questions of law and fact common to the Class affecting all parties that predominate over questions which may affect individual Class Members, including:

    a.  Whether Defendants engaged in unlawful, unfair, or deceptive business practices in selling gym memberships to Plaintiff and other Class Members;

6

b.   Whether Defendants made misrepresentations with respect to the gym memberships purchased by Plaintiff and other Class Members;

c.   Whether Class Members entered into agreements with Defendants to have automatic recurring electronic payments drawn from their personal accounts to be paid to Defendants for services;

d.   Whether Class Members executed written agreements memorializing their authorization of recurring automatic electronic fund transfers;

e.   Whether Defendants provided Class Members with copies of fully executed written agreements memorializing the terms for automatic recurring electronic fund transfers;

f.   Whether, despite not receiving proper authorization, Defendants took unauthorized automatic or recurring payments from Class Members' accounts;

g.   Whether Plaintiff and members of the Classes are entitled to equitable and/or injunctive relief; and

h.   Whether Defendants' unlawful, unfair, and/or deceptive practices harmed Plaintiff and other Class Members.

31.    Plaintiff represents, and is a member of, the proposed Class and Subclass.

32.    Plaintiff's claims are typical of all Class Members and are based on the same legal theories.

33.    Plaintiff has no interest antagonistic to, or in conflict with, the Class.

34.    Plaintiff will fairly and adequately protect the interests of all Class Members and has retained attorneys experienced in the prosecution of consumer class actions.

35.    A class action is superior to other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all Class Members is impracticable.  Even if every Class Member could afford,

and wanted to proceed with, individual claims, such redundant litigation would be unduly burdensome to the courts.  Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and exacerbate the delay and expense to all parties, and to the courts, resulting from multiple trials of the same complex issues.  The prosecution of separate actions by individual Class Members would thus create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Class Members not parties to such adjudications or that would substantially impair or impede the ability of such non-party Class members to protect their interests.

36.     By contrast, proceeding with the claims alleged on a class basis presents fewer management concerns, conserves the resources of the parties and of the court system, and protects the rights of all Class Members.

37.     As discussed in detail below, Defendants have acted, or refused to act, in ways generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to all Class Members.

38.     Pursuant to Fed. R. Civ. P. 23, a class action is appropriate and preferable because, on information and belief, the putative Class consists of hundreds, if not thousands, of individuals and is so numerous that joinder of all putative Class Members, whether otherwise required or permitted, is impracticable. Information confirming the actual number of putative Class Members is in Defendants' exclusive control.

39.     Pursuant to Fed. R. Civ. P. 23(b) (3), class certification is appropriate because no unusual difficulties will likely occur in the management of the proposed Class, as all questions of law or fact to be litigated at the liability stage are common to the putative Class and all compensatory relief is concomitant with a finding of liability and can be calculated objectively on a class-wide basis.

///

///

CLASS ACTION COMPLAINT; JURY DEMAND

# FIRST CAUSE OF ACTION

## Violation of the Electronic Funds Transfer Act

### (15 U.S.C. § 1693, *et seq.*)

40.     Plaintiff incorporates by reference all preceding paragraphs as though set forth fully herein.

41.     The Federal Reserve Board ("Board") implements the EFTA through Regulation E, which includes an official staff commentary and applies to accounts for which there is an agreement for EFT services to or from the account between a consumer and a third party. *See* Staff Commentary 205.3(a)-1.

42.     Section 903(10) of the EFTA provides that the term "preauthorized electronic fund transfer" means "an electronic fund transfer authorized in advance to recur at substantially regular intervals." 15 U.S.C. § 1693a(10).

43.     Defendants failed to comply with the writing and notice requirements of section 907(a) of the EFTA with respect to the EFTs described herein and as to all Class Members. 15 U.S.C. § 1693e.

44.     Section 907(a) of the EFTA provides in pertinent part that a "preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made." 15 U.S.C. §1693e(a).

45.     Section 205.l0 (b) of Regulation E provides similarly that "[p]reauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer." 12 C.F.R. § 205.10(b).

46.     Section 205.10(b) of the Board's Staff Commentary to Regulation E states that "[t]he authorization process should evidence the consumer's identity and assent to the authorization." 12 C.F.R. § 205.10(b), Supp. I, comment 5.  The Staff Commentary states further that "[a]n authorization is valid if it is readily

9

1    identifiable as such and the terms of the preauthorized transfer are clear and readily

2    understandable." 12 C.F.R. § 205.10(b), Supp. I, comment 6.

3        47.    On information and belief, Defendants debited Class Members' bank

4    accounts on a recurring basis without first obtaining for all such transactions a

5    written authorization signed or similarly authenticated by the respective Class

6    Members for preauthorized EFTs from their personal bank accounts, thereby

7    violating § 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of

8    Regulation E, 12 C.F.R. § 205.10(b).

9        48.    On information and belief, Defendants debited Class Members'

10    personal bank accounts on a recurring basis without providing each Class Member

11    a copy of a written authorization signed or similarly authenticated by the respective

12    Class Members for preauthorized EFTs, thereby violating the EFTA pursuant to 15

13    U.S.C. § 1693e(a) and 12 C.F.R. § 205.10(b).

14                    **SECOND CAUSE OF ACTION**

15                **Violation of the Consumer Legal Remedies Act**

16                    (Cal. Civ. Code § 1750, *et seq*.)

17        49.    Plaintiff incorporates by reference all preceding paragraphs as though

18    set forth fully herein.

19        50.    Defendants' actions as detailed above constitute a violation of the

20    CLRA to the extent that Defendants violated the following provisions:

21        a.  Representing that goods or products have sponsorship, approval,

22            characteristics, ingredients, uses, benefits, or quantities which they do

23            not have or that a person has a sponsorship, approval, status,

24            affiliation, or connection which he or he does not have. Cal. Civ.

25            Code § 1770(5);

26        b.  Representing that goods or products are of a particular standard,

27            quality, or grade, or that goods are of a particular style or model, if

28            they are of another. Cal. Civ. Code § 1770(7);

c. Advertising goods or products with intent not to sell them as
advertised; Cal. Civ. Code §1770(9);

d. Representing that a transaction confers or involves rights, remedies,
or obligations which it does not have or involve, or which are
prohibited by law; Cal. Civ. Code §1770(14); and

e. Misrepresenting the authority of a salesperson, representative, or
agent to negotiate the final terms of a transaction with a consumer.
Cal Civ. Code § 1770(a)(18).

51.    On or about April 20, 2021, through his Counsel of record, using
certified mail with a return receipt requested, Plaintiff served Defendant with
notice of the violations alleged and asked that Defendants correct, repair, replace,
or otherwise rectify the products and/or services alleged to be in violation of the
CLRA. This correspondence advised Defendants that they must take such action
within thirty (30) calendar days. As of the time of filing, Defendants have not
replied to this correspondence and have thereby refused to timely correct, repair,
replace, or otherwise rectify the alleged violations.

52.    Defendants violated the CLRA when they represented to Plaintiff that
recurring automatic EFTs would be governed by, and limited to, the original
agreement for such transactions signed in writing by Plaintiff.

53.    Defendants violated the CLRA when they misrepresented the
authority of gym personnel to negotiate and/or implement the final terms of
Plaintiff and other Class Members' memberships, including the scope of
authorization for automatic recurring EFTs.

### THIRD CAUSE OF ACTION

Violation of the Unfair Competition Law

(Cal. Bus. & Prof. Code § 17200, *et seq.*)

54.    Plaintiff incorporates by reference all preceding paragraphs as though
set forth fully herein.

55.     Actions for relief under the UCL may be based on any business act or practice that is unlawful, unfair or fraudulent within the broad statutory definition. A plaintiff is required to provide evidence of a causal connection between a defendant's violative conduct and the alleged harm to show that the defendant's conduct caused or was likely to cause substantial injury to consumers. It is insufficient for a plaintiff to show merely that the defendant's conduct created a risk of harm.

56.     As described herein, Plaintiff and Class Members have suffered injury in fact and been deprived of property as a result of Defendants' business acts and practices in California, which denied Plaintiff and Class Members monies transferred electronically without prior written authorization.  Defendants' conduct is thus substantially injurious to Plaintiff and Class Members, and Plaintiff seeks to enforce important rights affecting the public interest within the meaning of Code of Civil Procedure § 1021.5.

## UNLAWFUL

57.     The UCL prohibits "any unlawful…business act or practice." Cal. Bus. & Prof. Code § 17200, *et seq*.

58.     The violation of any state, federal, or local law is sufficient to satisfy the UCL's "unlawful" prong. Plaintiff contends, *inter alia*, that Defendants' failure to comply with the EFTA and CLRA is an unlawful practice under the UCL.

59.     As explained above, Defendants deceived Plaintiff and other Class Members by initiating EFTs not authorized by the parties' original written agreements and continuing to make such unauthorized transfers automatically on a recurring basis.

60.     Defendants also used misrepresentations and/or omissions to induce Plaintiff and other Class Members to purchase gym memberships that required payment of recurring monthly fees, in violation of the CLRA. Had Defendants not misrepresented the terms and conditions of the applicable agreements, Plaintiff and

other Class Members would not have purchased the gym memberships. Defendants' conduct therefore caused and continues to cause economic harm to consumers.

61.    In addition, Defendants continue solicit Plaintiff's business with offers by email to renew his membership on terms more favorable than those previously offered, such that the risk of future harm to Plaintiff is real.

62.    Defendants' conduct thus constitutes an "unlawful" business practice or act under the UCL.

## UNFAIR

63.    The UCL prohibits any "unfair ... business act or practice." Cal. Bus. & Prof. Code § 17200.

64.    In order to satisfy the "unfair" prong of the UCL, a plaintiff may show that the business practice(s) at issue is contrary to a predicate public policy and "tethered to specific constitutional, statutory, or regulatory provisions." *Drum v. San Fernando Valley Bar Assn*., 182 Cal. App. 4th 247, 257 (2010).

65.    Defendants' acts and practices, including omissions and/or misrepresentations, as alleged herein are "unfair" within the meaning of the UCL in that Defendants' conduct is substantially injurious to consumers and thus contrary to an important public policy.

66.    Defendants' conduct has caused, and continues to cause, substantial injury to Plaintiff and other Class Members due to Defendants' decision to sell gym memberships with terms and conditions that were different than represented and which resulted in the unauthorized EFTs described above.

67.    Moreover, Defendants' conduct as alleged herein benefits Defendants without providing any benefit to consumers. Indeed, Defendants' deceptive marketing and sales convinced Plaintiff and other Class Members that the memberships they purchased, and for which they made automatic monthly payments, were governed by the original agreements authorizing such recurring

13

EFTs. Defendant thus unfairly profited from the sale of memberships that were different than advertised and which Plaintiff and other Class Members reasonably believed they were purchasing. The injury to Plaintiff and the Class caused by the misconduct alleged is not outweighed by any countervailing benefit to consumers.

68.    Finally, the injury to Plaintiff and Class Members is not one that could have reasonably been avoided. Defendants' misrepresentation of the terms and conditions of the membership agreements, including any prior written authorization for recurring automatic EFTs. injured Plaintiff and Class Members, who were unlawfully deprived of monies.

69.    In addition, Defendants failed to take reasonable steps to inform Plaintiff and Class Members that its employees were authorized to manage and/or implement recurring automatic EFTs without confirming that all such transactions had been authorized in writing. As such, Defendants took advantage of its perceived position of power in order to induce Plaintiff and Class Members to purchase its products.

70.    Defendants' alleged misconduct has violated the "unfair" prong of the UCL.

**FRAUDULENT**

71.    The UCL prohibits any "fraudulent ... business act or practice." Cal. Bus. & Prof. Code § 17200. In order to prevail under the "fraudulent" prong of the UCL, a consumer must allege that the fraudulent business practice was likely to deceive members of the public.

72.    The test for "fraud" under the UCL is whether the public is likely to be deceived, even if no consumer was actually deceived.

73.    Here, Plaintiff and Class Members were not only likely to be deceived, but also were actually deceived by Defendants, as evidenced by the fact that Plaintiff and other Class Members agreed to purchase, and did purchase, the goods and/or services advertised. Plaintiff and Class Members' reliance on

Defendants' misrepresentations and/or omissions is reasonable due to the parties' unequal bargaining power. It is likely that Defendants' fraudulent business practices would deceive other members of the public for the same reasons.

74.    As alleged herein, Defendants deceived Plaintiff and other Class Members by misrepresenting the terms and conditions of the membership agreements, including by failing to disclose the authority of Defendants' employees to negotiate and/or implement the final terms of written authorization for recurring automatic EFTs to pay Defendants for goods and/or services.

75.    Defendants' conduct has thus violated the "fraudulent" prong of the UCL.

76.    Without injunctive relief in the form of an order directing Defendants to cease and desist the offending conduct, Defendants' will likely continue undeterred, and monetary compensation alone is not an adequate remedy.

77.    Defendants have thus engaged in unlawful, unfair, and fraudulent business acts entitling Plaintiff and Class Members to judgment and equitable relief against Defendants, as set forth in the Prayer for Relief, including an order requiring Defendants to cease such acts of unlawful, unfair, and fraudulent business practices immediately and requiring Defendants to correct its actions, pursuant to Cal. Bus. & Prof. Code § 17203.

## FOURTH CAUSE OF ACTION

### Conversion

78.    Plaintiff incorporates by reference all preceding paragraphs as though set forth fully herein.

79.    At all relevant times Plaintiff owned the funds in a bank account ending in the number -0656 at the Bank of America located in Hollywood, California.

80.    During the period from approximately July 2018 through June 2020, Defendants made recurring automatic EFTs in the amount of approximately $30.00

15

every two (2) to four (4) weeks from Plaintiff's account, including to pay fees for an unrelated patron's membership, without permission or prior authorization from Plaintiff.

81.     Defendants thus intentionally deprived Plaintiff of funds in his account without Plaintiff's consent.

82.     At all relevant times, Defendants acted with malice, recklessness, and deliberate disregard for Plaintiff's contractual and personal rights.

83.     As a proximate result of Defendants' actions, Plaintiff was deprived of approximately $700 and experienced anxiety and mental distress.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays that judgment be entered against Defendants for the following:

1. An order certifying the Class and California Subclass and appointing Plaintiff as Representative;

2. An order certifying the undersigned counsel as Class Counsel; An order requiring Defendants, at their own cost, to notify all Class Members of the unlawful and deceptive conduct herein;

3. An order requiring Defendants to publish corrective advertising regarding the conduct discussed above;

4. Actual damages suffered by Plaintiff and Class Members as applicable or full restitution of all funds acquired from Plaintiff and Class Members from the sale of Defendants' goods and/or services during the relevant class period;

5. Punitive damages, as allowable, in an amount determined by the Court or jury;

6. Any and all statutory enhanced damages;

7. Pre- and post-judgment interest;

6.     All reasonable attorneys' fees and costs of suit incurred herein; and

16

7.     All other relief to which Plaintiff and Class Members may be entitled as determined by the Court.

## **DEMAND FOR JURY TRIAL**

Plaintiff requests a trial by jury on all applicable claims.

Date: June 11, 2021                    LAW OFFICES OF TODD M. FRIEDMAN, P.C.


                                       By:     \_\_/s/ Todd M. Friedman_____
                                               Todd M. Friedman
                                               Adrian R. Bacon
                                               Attorneys for Plaintiff
                                               ZOLTON NAGY

CLASS ACTION COMPLAINT; JURY DEMAND